IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DAVID B. TURNER BUILDERS  LLC, and                    PLAINTIFFS
NEW ENGLAND CONSTRUCTION LLC


VS.                          CIVIL ACTION NO.<u>3-21-cv000309-HTW-LGI</u>

WEYERHAESER COMPANY,  WEST FRASSER,            DEFENDANTS
 CANFOR COMPANY, GEORGIA-PACIFIC,
 SIERRA PACIFIC INDUSTRIAL,
 INTERFOR COMPANY, HAMPTON AFFILIATES, IDAHO FOREST
 GROUP, POTLATCH DELTIC, RSG FOREST PRODUCTS
JOHN DOE 1-5
JOHN DOE COMPANIES 1-5

---

**PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANT MOTION TO
DISMISS DOC. [51],  and [56]**

---

**COMES NOW,** Plaintiffs' David Turner Properties LLC, and New England Construction

LLC by and through his attorney of record and files this response to Defendant RSG

FOREST PRODUCTS, INC. motion to dismiss for lack of personal jurisdiction.


  As such, Plaintiff will show the following facts:  First,

## THE FACTS AND BACKGROUND:

1.   Defendant RSG Forest Products, and its affiliated saw mill companies is one of the "makers, deciders, and producers" of lumber/timber in America.   It is well established that the maker, or creator of lumber/timber in the United States has a tremendous impact on the cost of those goods flowing through interstate commerce. The fact is **The fores**try industry is extremely important to the United States' economy, employing approximately 953,000 people and accounting for an annual payroll income of over $53 billion.The industry also intersects with many other critical industries, such as logging, wood product manufacturing, and **housing buildings construction.**

2.    That in mind and while Plaintiff demonstrates that RSG Forest Products conduct shows that the minimal contact in Mississippi is present by showing that only the large conglomerate companies, as known as the top 10 producers of lumber and timber, also owns most sawmills, are the price establishers in free commerce for the lumber/timber industry and as such, RSG Forest Products, Inc. is one of those predatory conspirators and monopolizer whom Plaintiffs avers has injured Plaintiff as claimed in the complaint.

3.     Moreover, upon information and belief the Defendant RSG, and those listed as Defendants in this matter, all have communicated in  some improper way that constitutes conspiracy and monopoly of predatory pricing in the lumber and timber industry which flowed down to Plaintiffs as claimed here.  Upon information and belief, RSG along with the other named Defendants in  this action all communicated via international air waves telephone, internet, and/or in person or through the stock exchange and decided to all **at the identical   time,"** raise the price of the lumber/timber in the United States whereby the state of Mississippi, the county of Hinds and Madison Mississippi were irreparably harmed    with the virus of unreasonable greed by these corporations.    Additionally, Plaintiffs suffers severe business interference, loss of income, irreparable loss of business and the other claims sought in Plaintiffs complaint.     In fact, to show the propensity of this Defendant's conduct, as well as the Defendants whom conspired with RSG that reached into the state of Mississippi and nesting thereto, is shown by at least one of the Prices of lumber that have skyrocketed as shown in **Ex. A,[1]** Plaintiff's invoice dated May 4, 2021 and showing the cost of 2x6x24 lumber per stick price of $58 dollars per stick., but where prior to the monopoly and price gauging by the following Defendants including RSG Forest Products Inc, the same lumber was priced around $15 dollars.

---

[1] Plaintiff is showing only one of the lumber predatory pricing at this time, but acknowledge that there are several other invoices that reflect the same predatory pricing of different lumber boards that are necessary for Plaintiffs business operations.

Table 1: Top U.S. Manufacturers of Softwood or Hardwood Lumber

| Company | U.S. Headquarters | Number of U.S. Lumber Mills/Plants | Capacity (MMBF) [3] |
|---|---|---:|---:|
| Weyerhaeuser Co. | Seattle, WA | 19 | 3,552 |
| Georgia-Pacific LLC | Atlanta, GA | 27 | 2,949 |
| West Fraser Timber Co., Ltd. | Germantown, TN | 21 | 2,354 |
| Sierra Pacific Industries | Anderson, CA | 10 | 2,077 |
| Interfor (International Forest Products, Ltd.) | Peachtree, GA | 14 | 1,952 |
| Hampton Affiliates | Portland, OR | 7 | 1,869 |
| Canfor Corp. | Mobile, AL | 12 | 1,416 |
| Idaho Forest Group | Coeur d'Alene, ID | 7 | 1,270 |
| RSG Forest Products | Kalama, WA | 5 | 801 |
| PotlatchDeltic Corp. | Spokane, WA | 6 | 670 |

Plaintiff contends that before the predatory pricing as complained hereto, Defendants lumber prices were reasonable and stable, and that was for at least 20 years past.

Additionally, Plaintiffs avers that the cost of lumber for the same board would be approximately in and around $15 dollars which is an approximately $44.00 dollar a stick difference and a stupendous price gouging around 400% markup.  Plaintiffs contend that all Defendants including RSG Forest Products, prior to participating in the price gouging and predatory pricing scheme, reasonably kept competitively prices on lumber.  However, it became apparent that in and around March 2020 to present, Defendants including RSG Forest products conspired to monopolize the lumber market and to raise the price of lumber at an explosive cost for no other legitimate reason but excessive profits.

4.   Additionally, Defendants are nationally known to be ranked in production which clearly means that they are ranked in sales as the United States Top producers in Lumber distribution as shown in the chart above and provided by: (Image credit: Tom Clausen/ **shutterstock.com**).  Therefore, for Defendant and RSG Forest Products to file a motion to dismiss for lack of personal jurisdiction is strange for the following analogy of facts and law as provided below.

## THE LAW AND ANALYSIS:

5. Laws involving personal jurisdiction has been established for many years.  In fact, the U.S. Supreme Court in  _**Burger King Corp. v. Rudzewicz,**_ 471 U.S. 462, 473–74, 105 S. Ct. 2174, 2182–83, 85 L. Ed. 2d 528 (1985); **2183 *Id.,* at 223, 78 S.Ct., at 201; see

also _**Keeton v. Hustler Magazine, Inc.,**_ *supra,* 465 U.S., at 776, 104 S.Ct., at 1479. stating: We have noted several reasons why a _**forum legitimately may exercise personal jurisdiction over a nonresident who "purposefully directs" his activities toward forum residents.**_   A State generally has a "manifest interest" in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors. **2183 *Id.,* at 223, 78 S.Ct., at 201. Moreover, where individuals "purposefully **derive benefit" from their interstate activities,** *474 _**Kulko v. California Superior Court,**_ 436 U.S. 84, 96, 98 S.Ct. 1690, 1699, 56 L.Ed.2d 132 (1978), it may well _**be unfair to allow them to escape**_ having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded _**as a territorial shield to avoid interstate obligations that have been voluntarily assumed.**_ And because "**modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,**" it usually will **not** be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. _**McGee v. International Life Insurance Co.,**_ *supra,* 355 U.S., at 223, 78 S.Ct., at 201.  _**Burger King Corp. v. Rudzewicz,**_ 471 U.S. 462, 473–74, 105 S. Ct. 2174, 2182–83, 85 L. Ed. 2d 528 (1985).

6.  Likewise, in the case *sub judice,* Plaintiffs complaint makes claims stating that unfair price gouging and predatory pricing is clearly shown by the conduct of the top 10

producers of lumber/timber in the United States and that such monopolizing conduct in the state of Mississippi trade industry should have been anticipated litigation in Mississippi.  Plaintiff contends that surely these large corporations did not think that their patterns of predatory pricing over a year which  caused the injuries claimed in Plaintiffs suit could be ignored.   Plaintiffs contend that such injuries as claimed in their suit, are irreparably damaging to their business and such a virus cannot be cleared, nor has been cleared by slightly reducing the same lumber prices after the suit was filed.[2]

7.    Defendants including RSG Forest Products motion to dismiss based on personal jurisdiction, Doc. [51]are attempting to dissuade facts that their involvement in the highly inflated pricing of lumber and wood in the state of Mississippi does not warrant their being hauled into a district court in Mississippi for the claims sought in the suit. Defendants went so far as to say that they have not advertised, have an office, have salespersons, or any other action as noted in the classic case of **_McGee v. International Life Insurance Co.,_** *supra,* 355 U.S., at 223, 78 S.Ct., at 201.

8. However, and since the U.S. Supreme Courts holding in International Life Insurance Company, the Supreme Court has expanded its holding as found in **_Burger King Corp. v. Rudzewicz,_** 471 U.S. 462, 473–74, 105 S. Ct. 2174, 2182–83, 85 L. Ed. 2d 528 (1985), by holding that  "***a nonresident who "purposefully directs" his activities toward forum***

---

[2] Plaintiffs contend that some lumber prices have fallen but they are still reflective of at least 300 percent increase.

***residents, and*** where individuals "purposefully **_derive benefit" from their interstate_**

**_activities,_** *474 **_Kulko v. California Superior Court,_** 436 U.S. 84, 96, 98 S.Ct. 1690,

1699, 56 L.Ed.2d 132 (1978), it may well ***be unfair to allow them to escape*** having to

account in other States for consequences that arise proximately from such activities; the

Due Process Clause may not readily be wielded **_as a territorial shield to avoid interstate_**

**_obligations that have been voluntarily assumed._**     Similarly, Defendant RSG Forest

Product have stated in their own company mission statement(on-line) that it is one of the

largest lumber manufacturer in the Pacific NorthWest and that it has acquired several

sawmill companies as a result.  Please see **exhibit B.**   As a result, RSG Forest Products

should have anticipated being hauled into a court of law because they are participants in

the contributory reckless and negligent conduct of monopolizing the lumber industry

through their conspiracy of price fixing, unfair business practices and predatory pricing,

that has caused specific injuries resulting in the state of Mississippi.   In short, these

Defendants should not be allowed to severely send a blow to businesses in the state of

Mississippi by conspiring with the other Defendants to raise the prices of lumber/timber

in Mississippi and then hide their hand by stating that they do not transact business in

Mississippi as held in the International Shoe case, when in actuality their actions of

monopolizing, conspiring, and artificially inflicted the greed of their companies by fixing

prices on lumber and timber to the degree complained in Plaintiff's suit are apparent as

claimed by Plaintiff here and in the complaint.

9.   According to ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 595–97, 127 S. Ct. 1955, 1988–89, 167 L. Ed. 2d 929 (2007) the United States Supreme Court held that: "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."     The dissent even started that: "The transparent policy concern that drives the decision is ***the interest in protecting antitrust defendants—***who in this case are some of the wealthiest corporations in our economy—from the burdens of pretrial discovery. *Ante,* at 1966 – 1967. Even if it were not apparent that the legal fees petitioners have incurred in arguing the merits of their Rule 12(b) motion have far exceeded the cost of limited discovery, or that those discovery costs would burden respondents as well as petitioners, that concern would not provide an adequate justification for this law-changing decision. For in the final analysis it is only a lack of confidence in the ability of trial judges to control discovery, buttressed by appellate judges' independent appraisal of the plausibility of profoundly *597 serious factual allegations, that could account for this stark break from precedent.  If the a*llegation of conspiracy happens to be true*, today's decision obstructs the congressional policy favoring competition that undergirds both the Telecommunications Act of 1996 and the Sherman Act itself. More importantly, even if there is abundant evidence that the allegation is untrue, directing that the case be dismissed without even looking at any of that evidence marks a fundamental—and

unjustified—change in the character of pretrial practice. *__Bell Atl. Corp. v. Twombly__*, 550 U.S. 544, 557–59, 127 S. Ct. 1955, 1966–67, 167 L. Ed. 2d 929 (2007).

10.  Therefore, in the interest of justice and as it relates to RSG Forest Products, Plaintiffs claims must be accepted as true and plausible for litigation because defendant RSG Forest Products through either internet or phone calls with the other defendants received benefits that derived from their actions of conspiracy and monopolizing the artificial predatory pricing that touchdown  in the state of Mississippi as claimed by Plaintiffs.

11.    Moreover, the U.S. Supreme Court has also held that: "Jurisdiction in these circumstances __may not be avoided merely because the defendant did not *physically* enter the forum State.__ Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an in __escapable fact of modern commercial life __ that a substantial amount of *__business is transacted solely by mail and wire communications across state lines__*, thus obviating the need for physical presence within a State in which business is conducted. The Court went further and stated that: __"So long as a commercial actor's efforts are "purposefully directed" toward residents of another State,__ we have consistently rejected the __notion that an absence of physical contacts can defeat personal jurisdiction__ there. *__Keeton v. Hustler Magazine, Inc.,__* *supra,* 465 U.S., at 774–775, 104 S.Ct., at 1478; see also *__Calder v. Jones,__* 465 U.S., at 778–790, 104 S.Ct.,

at 1486–1487; *__McGee v. International Life Insurance Co.,__* 355 U.S., at 222–223, 78 S.Ct., at 200–201. *__Cf. Hoopeston Canning Co. v. Cullen,__* 318 U.S. 313, 317, 63 S.Ct. 602, 605, 87 L.Ed. 777 (1943). *__Burger King Corp. v. Rudzewicz,__* 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84, 85 L. Ed. 2d 528 (1985).

12.   Likewise, Plaintiffs claims against all Defendants is that Defendants conspired to monopolize the lumber and timber market by artificially inflating the severe increase in lumber and timber in the state Mississippi for nothing short of raising their profits. Further, Plaintiffs contends that each Defendants price on all he lumber used in Plaintiffs business operations increased *at the same time*, to the *same location(Mississippi),* and *during the same date* and all Defendants predatory pricing was the same price if you give and take the 400 parent increase serious in the building of construction.   Furthermore, Plaintiff avers that it is likely impossible that each Defendant experienced a short fall in timber, or shortage of employees, or even a breakdown in equipment machines, when each Defendant had the unmitigated nerve to have the same  exorbitant price as the other.

13.  It follow that found in  *__Helicopteros Nacionales de Colombia, S.A. v. Hall,__* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 1984), the U.S. Supreme Court held that:

 "[t]he forum State *__does not exceed its powers under the Due Process Clause__* if it asserts personal jurisdiction over a corporation that delivers it*s products into the stream of commerce with* **the expectation that they will be purchased by consumers in the forum State"** and those products subsequently injure forum consumers. *__World-Wide__*

***Volkswagen Corp. v. Woodson,*** *supra,* 444 U.S., at 297–298, 100 S.Ct., at 567–568. Similarly, Plaintiffs claim is that Defendants conspired to monopolized and insert a severely infliction of artificial predatory pricing of lumber into the steam of commerce and thereby expecting that Plaintiffs will purchase the artificially priced lumber in Mississippi. Therefore, just because RSG Forest Products did not have a salesman in Mississippi, an office located in Mississippi they still had the modern technology of the internet and phones to inflict injuries to Mississippi companies and consumers when they conspired to do predatory pricing of lumber from their location and that is regardless from a train, plane, or automobile or even their office location.

Next, Defendants state that they should not be hauled into a Mississippi District Court because they did not purposefully established minimum contacts with the state of Mississippi.

14.   However, the U.S. Supreme Court held to the contrary by stating: "Notwithstanding these considerations, the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. ***International Shoe Co. v. Washington,*** *supra,* 326 U.S., at 316, 66 S.Ct., at 158."   The Court stated that: "Although it has been argued that *foreseeability of causing injury in another State* should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S.,

at 295, 100 S.Ct., at 566. Instead, "the foreseeability that is critical to due process analysis ... is that the **defendant's conduct and connection** with the forum State are such that he should reasonably anticipate being haled into court there." *Id.*, at 297, 100 S.Ct., at 567. In defining when it is that a potential defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of ***Hanson v. Denckla***, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–1240, 2 L.Ed.2d 1283 (1958): There the court held that: "The application *475 of that rule will vary with *the quality and nature of the defendant's activity.*

15.    In the case *sub judice,* Plaintiffs avers that each Defendant has intentionally, deliberately, and purposefully monopolized the lumber and timber industry when they bought sawmills in each the state of Mississippi and those bought in other states located in the United States, and  thereby controlling the predatory price fixing of the exorbitant prices of lumber and timber. Plaintiffs contend that Defendants deliberately and with purpose structured price gouging in Mississippi through the internet from planes, trains, automobiles and/or offices with the other named Defendants and as a result, Plaintiffs were injured while they relied on good faith in business dealings from all Defendants.

16.    Furthermore, the U.S. Supreme Court, provides the requirement for "purposeful availment" as: "This **"purposeful availment"** requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, ***Keeton v. Hustler Magazine, Inc.***, 465 U.S., at 774, 104 S.Ct., at

1478; ***World-Wide Volkswagen Corp. v. Woodson****, supra,* 444 U.S., at 299, 100 S.Ct., at 568, *or* of the "unilateral activity of another party or a third person," ***Helicopteros Nacionales de Colombia****, **S.A. v. Hall,** supra,* 466 U.S., at 417, 104 S.Ct., at 1873. *Jurisdiction is proper,* however, \*\*2184 ***where the contacts proximately result from actions by the defendant himself that create a "substantial connection"*** with the forum State. ***McGee v. International Life Insurance Co.,*** *supra,* 355 U.S., at 223, 78 S.Ct., at 201; see also ***Kulko v. California Superior Court,*** *supra,* 436 U.S., at 94, n. 7, 98 S.Ct., at 1698, n. 7.

17.   Likewise, Plaintiffs has provided this court with the facts that goes back to March 2020 regarding Defendants purposefully conspired to inflict upon Plaintiffs in Mississippi predatory and an exorbitant price scheme and continued the same price scheme through July 2021.   Therefore, there is not found any random, fortuitous," or "attenuated" contacts with Plaintiffs and Defendants in the state of Mississippi, rather intentional deliberate, negligent and reckless greed for profits.  Also, the scheme of predatory pricing by all Defendants shows that their conduct was deliberate and continuing.   Thereby, where the U.S. Supreme Court has held that:  "Thus where the defendant "deliberately" has \*476 engaged in significant activities within a State, ***Keeton v. Hustler Magazine, Inc****., supra,* 465 U.S., at 781, 104 S.Ct., at 1481**, or  has created "continuing obligations"** between himself and residents of the forum, ***Travelers Health Assn. v. Virginia****,* 339 U.S., at 648, 70 S.Ct., at 929, he manifestly has availed himself of the

privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well, is applicable in this case before the court.

18.   Last, found in **_Burger King Corp. v. Rudzewicz_**, 471 U.S. 462, 478–79, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985), the highest court in the land of the United States held in the Burger King Corp. case that:   "We cannot conclude that Florida had no "legitimate interest in holding [Rudzewicz] answerable *483 on a claim related to" the contacts he had established in that State. **_Keeton v. Hustler Magazine, Inc.,_** 465 U.S., at 776, 104 S.Ct., at 1479; see also *McGee **v. International Life Insurance** **2188 Co.,** 355 U.S., at 223, 78 S.Ct., at 201 (noting that State frequently will have a "manifest interest in providing effective means of redress for its residents").   Moreover, although Rudzewicz has argued at some length that Michigan's Franchise Investment Law, Mich.Comp.Laws § 445.1501 *et seq.* (1979), governs many aspects of this franchise relationship, he has not demonstrated how Michigan's acknowledged interest might possibly render jurisdiction in Florida *unconstitutional.*

19.   Similarly here, and unlike the litigants of the International Shoe case citied by Defendants, technology of the internet has rendered most sophisticated businesses the means to achieve their business in interstate commerce through such methods of an email and telephone call as alleged by Plaintiffs hereto.   As the U.S.Supreme Court held

in***Burger King Corp. v. Rudzewicz,*** 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84, 85 L. Ed. 2d 528 (1985), quoting ***Keeton v. Hustler Magazine, Inc.,*** *supra,* 465 U.S., at 774–775, 104 S.Ct., at 1478; see also ***Calder v. Jones,*** 465 U.S., at 778–790, 104 S.Ct., at 1486–1487; ***McGee v. International Life Insurance Co.,*** 355 U.S., at 222–223, 78 S.Ct., at 200–201. ***Cf. Hoopeston Canning Co. v. Cullen,*** 318 U.S. 313, 317, 63 S.Ct. 602, 605, 87 L.Ed. 777 (1943). **Jurisdiction may not be avoided merely because the defendant did not *physically* enter the forum State.** Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an **inescapable fact of modern commercial life** that a substantial amount of ***business is transacted solely by mail and wire communications across state lines***, thus obviating the need for physical presence within a State in which business is conducted. The Court went further and stated that: **"So long as a commercial actor's efforts are "purposefully directed" toward residents of another State,** we have consistently rejected the **notion that an absence of physical contacts can defeat personal jurisdiction** there. ***Keeton v. Hustler Magazine, Inc.,*** *supra,* 465 U.S., at 774–775, 104 S.Ct., at 1478; see also ***Calder v. Jones,*** 465 U.S., at 778–790, 104 S.Ct., at 1486–1487; ***McGee v. International Life Insurance Co.,*** 355 U.S., at 222–223, 78 S.Ct., at 200–201. ***Cf. Hoopeston Canning Co. v. Cullen,*** 318 U.S. 313, 317, 63 S.Ct. 602, 605, 87 L.Ed. 777 (1943). ***Burger King Corp. v. Rudzewicz,*** 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84, 85 L. Ed. 2d 528 (1985).

**20.**  It follows that in the case at hand, the U.S. Supreme Court has held that Defendants *do not have to be physically present  in the state of Mississippi to harm the residents of Mississippi* . Comparably, and like the monopolies of OPEC Oil and their affiliated companies, OPEC affect the price of gasoline that consumers in Mississippi buys each and every day and they are not physically located in the state of Mississippi nor does some of them have advertisement, salesmen, or even invoices that states that they directly do business within Mississippi jurisdiction. However, and like Defendants including RSG Forest Products, conduct as a conspirator apply predatory pricing of lumber and timber that has injured Plaintiffs whom are residents of the state of Mississippi.

**21**.  Furthermore, Defendant RSG Forest Products went to great lengths to follow the International Shoe minimum contact requirements in an effort to show they have not *physically* had contact with Plaintiffs in the forum state.  Nonetheless, what RGS Forest Products did not argue is that fact that Plaintiffs claim of RSG Forest Products conspiracy with the other named Defendants to monopolize and artificially inflate the cost of lumber and timber in the state of Mississippi through communications with the other Defendants could reasonably cause each Defendant to have to answer for the harm claimed in this district court.

**22.**  As a matter of fact, **exhibit B** shows that RSG Forest Products very own mission statement is a siren to the world wide web (internet) states that they are **"Today the company is ONE OF THE LARGEST LUMBER MANUFACTURER."**  As a result,

Defendant RSG Forest Product does advertise itself as one of the largest lumber manufacturers as claimed by Plaintiff and therefore, they should be expected to be hauled into this District Court for the reasons stated above while the court accepts Plaintiff's complaint true facts and those facts are disposable by a jury.     In fact, Mississippi Supreme Court and 5th Circuit  holds that:

""*When considering a motion to dismiss, **the allegations in the complaint must be taken as true** and the motion should n*ot be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." ***Howard v. Estate of Harper ex rel. Harper,*** 947 So.2d 854, 856 (Miss.2006) (citing ***Liggans v. Coahoma Sheriff's Dep't***, 823 So.2d 1152, 1154 (Miss.2002)). "This Court must find that there is no set of facts that would entitle a defendant to relief under the law in order to affirm an order granting the dismissal of a claim on a Rule 12(b)(6) motion." ***Wilbourn v. Equitable Life Assurance Soc.***, 998 So.2d 430, 435 (Miss.2008) (citing ***Lowe v. Lowndes County Bldg. Inspection Dep't,*** 760 So.2d 711, 713 (Miss.2000)). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, and an inquiry as to the legal sufficiency is "essentially limited to the content of the complaint." ***T.M. v. Noblitt,*** 650 So.2d 1340, 1345–46 (Miss.1995) (quoting ***Jackson v. Procunier,*** 789 F.2d 307, 309 (5th Cir.1986)). This Court has gone further, holding that Rule 12(b)(6) motions "are decided on the face of the pleadings alone." **Hartford Cas. Ins., Co. v. Halliburton Co.,** 826 So.2d 1206, 1211 (Miss.2001).

23.  Plaintiff nudges this court to consider the facts plead in the complaint as true and if true then RSG Forest Products has minimal contact with the state of Mississippi for the injuries plead in the complaint.  As such, no Defendant including Defendant RSG should not be able to escape litigating in Mississippi only because they do not have an office, salesperson nor a bill board located in Mississippi.  For fear of sounding redundant, but as the Supreme Court opined, actual presence is not required to prohibit personal jurisdiction.  It would seem that if RSG Forest Products would have argued in their motion to dismiss that they never communicated with the other Defendants  as claimed by Plaintiff, however they did not so the allegation to injury Plaintiff through their predatory price fixing is actionable as a violation of the Sherman Act as well as the other laws applicable to Plaintiffs claims.

24.  In fact, even Doc.[56], a motion to dismiss from **Defendants GP(Georgia Pacific) WOOD  PRODUCTS,  CANFOR  CORPORATION,  HAMPTON  TREE  FARMS LLC,  IDAHO  FOREST  GROUP,  INTERIOR  CORPORATION,  POTLATCH DELTIC LAND & LUMBER, SIERRA PACIFIC INDUSTRIES, WEST FRASER, and  RGS  FOREST  PRODUCTS** shows  and  demonstrates  Plaintiffs  claims  of conspiracy and monopolizing efforts by **ALL** Defendants as true.  Otherwise, one might think that each company would make certain that they ***did not communicate*** with each other at the times claimed in the complaint regarding artificially severely hiking the price of lumber and timber for profits as claimed by Plaintiffs.   However, and as claimed by

Plaintiffs, Defendants then and now have communicated regarding the predatory pricing scheme as claimed by Plaintiffs.  Moreover, Plaintiffs contention that Defendants are not strangers to one another, and the perfect [10] conspirators whom Defendants are suggesting did not communicate to conspire on predatory pricing, price fixing, violation of the Sherman Act nor any other laws regarding monopolizing by huge corporations  is simply a fantasy of Plaintiffs is actually   shown in Defendants JOINED motion to dismiss.   In fact, Defendants congregated and conspired so well in their motion to dismiss Plaintiffs claims in that they seem to have forgotten that information about  the perfect [10] was gathered long before now.  Indeed **exhibit C(RSG record showing they are one of the 10 top lumber/timber companies as claimed by Plaintiffs),D(CONFOR showing they are located in Mississippi), E (Georgia Pacific office located in Monticello, MS), F(WEST FRASER found in Lowes and/or Home Depot in Madison and Jackson, Mississippi, G,(Weyerhaeuser whom has a location in Pearl, Mississippi, H (INTERFOR COMPANY whom has purchased [4] sawmills from Georgia-Pacific locations in Bay Springs Mississippi, and Fayette Mississippi,** and upon information and belief that like RSG Forest Products IDAHO Forest Products, Hampton Tree Farms and Potlach Deltic Lan & Lumber, all shows the apparent conspiracy to communicate the harm done by Defendants when they   transacted predatory pricing that injured Plaintiffs in the state of Mississippi as complained. It follows that if the claims made by Plaintiff does not comport personal jurisdiction on

RSG Forest Products as it does the other Defendants then it would seem logic for RSG Forest Products **NOT TO JOIN IN WITH THE OTHER DEFENDANTS WHOM HAVE OFFICES IN MISSISSIPPI**, as shown in exhibit C through G of this response in opposition to dismissal.    Surely these huge corporations considered that joining in a motion to dismiss might ratify Plaintiffs claims of conspiracy and that a  reasonable mind might believe that the claim of conspiracy is attached by the joining in of the motion to dismiss and attempting to claim the foreclosure of being hauled into a Mississippi District Court.

**25.**  As a result, t*he facts are CLEAR and UNDISPUTED THAT  ALL DEFENDANTS CONSPIRED* and wrongfully monopolized the predatory price fixing as claimed by Plaintiffs, and that such injuries were a direct result of Defendants predatory pricing as claimed in Plaintiffs complaint.  Plaintiff avers that it is stipulated in the market that the wrongful conduct by all Defendants was established over a year ago and to this present day the harm is continuing and ripe for litigation.   Furthermore, these Defendants are present in Mississippi, and they all appear to have connections and contributed to the harm claimed by Plaintiff while transacting business in MISSISSIPPI.   Moreover, it is without  logic  how  these  Defendants  get  to  injury  Mississippi  consumers  in  their businesses even when it is public record that some Defendants have even bought small sawmills that are located in Mississippi which is on point with monopolizing the lumber and timber industry including predatory pricing in Mississippi.   Therefore, if Defendant

RSG Forest Products did not conspire to monopolize and inflate  predatory pricing on lumber at a rate in and around 400 percent, then surely RSG Forest Products should  have considered that joining with all the Defendants for a motion to dismiss Doc.[56] could be adverse to their position that they do not transact business in Mississippi.   As a result of Plaintiffs claims of conspiracy Plaintiffs offer **exhibit H,** an affidavit by New England Construction President, that each and every exhibit provided hereto relates to each Defendant of this lawsuit in claims of conspiracy by all Defendants.

As to Doc.[56], Defendant did nothing short of filing a plethora of papers refuting Plaintiffs right to file claims pursuantly to F.R.C.P. 8, CONTENTS OF A PLEADING, and thereby states no contention that the court should entertain as a dismissal of Plaintiffs suit.   Plaintiff contend that F.R.C.P. 8 governs pleadings and accordingly to ***Lowrey v. Texas A & M Univ. Sys***., 117 F.3d 242, 247 (5th Cir. 1997)247 678 "A motion to dismiss under rule 12(b)(6) "is viewed with **disfavor and is rarely** granted." ***Kaiser Aluminum & Chem. Sales v. Avondale Shipyards***, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint **must be taken as true.** ***Campbell v. Wells Fargo Bank***, 781 F.2d 440, 442 (5th Cir.1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ***Conley v. Gibson***, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Blackburn,* 42 F.3d at 931.

This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 *Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 601 (1969).* Therefore, Plaintiff has presented enough facts per F.R.C.P. 8 in his complaint as well as those specified in this response to a motion to dismiss whereby Plaintiffs claims should be allowed to be presented before a jury for a final determination of the facts.

## CONCLUSION

Hence, Plaintiffs have shown in the preceding paragraphs facts from the complaint that must be accepted as true, as well as the law to support those facts that each Defendant including RSG Forest Products should be pulled into this court's personal and subject jurisdiction as a matter of facts and law and that Plaintiffs claims survives a 12(b) motion to dismiss.  Also,  as a result, RSG Forest Products cannot escape being hauled into this Court for the injuries they contributed and inflicted upon Plaintiffs as claimed..

**RESPECTFULLY SUBMITTED THIS THE 21st day of July, 2021**

**/s/ Abby Robinson (MSB 105157)**
ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.
227 Pearl Street
JACKSON, MISSISSIPPI 39201
PHONE: 601-321-9343
EMAIL: arobinsonlawfirm@yahoo.com
EMAIL: abby@askabbylaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned acknowledges that she has filed the foregoing pleading on July 21, 2021

with the Clerk of the Court whom has sent the same to all parties in this litigation.

**/s/ Abby Robinson (MSB 105157)**
ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.
227 Pearl Street
JACKSON, MISSISSIPPI 39201
PHONE: 601-321-9343
EMAIL: arobinsonlawfirm@yahoo.com
EMAIL: abby@askabbylaw.com
attorney for Plaintiff

Ryan Beckett MBN. 99524
La'Toyia Slay  MBN. 104804
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39158
ph. 601-948-5700
Email: rayan.beckett@butlersnow.com
La'toyia.Slay@butlersnow.com

Erik Koons(admitted pro hac vice
Baker Botts LLP
700 K. Street NW
Washington, DC 20001
Email erik.koons@bakerbotts.com
jana.seidl@bakerbotts.com

Craig Stanfield(admitted pro hac vice

King & Spalding LLP
1100 Lousiana, Suite 4100
Houston, TX 770002
email: estanfield@kslaw.com
Carl Burkhalter pro hac vice
Maynard, Cooper & Gale P.C.
1901 6th Avenue North, Suite 1700
Birmingham, AL 35203
Email: cburkhalter@maynardcooper.com
Email: parrot@maynardcooper.com


R. David Kaufman, MSB 3526
M. Patrick McDowell, MSB. 9746
Brunni, Grantham, Grower & Hewes, PLLC
190 E. Capitol Street, Suite 100
Email dkaufman@brnini.com
pmdowell@brunini.com

David Maas, admitted pro hac vice
Davis Wright Tremaine LLP
920 5th Avenue, suite 3300
Seattle, WA 98104-1610
davidmaas@dwt.com
ph. 206-622-3150

Adam Stone MSB. 10412
Kaytie Pickett MSB. 103202
Jones Walker LLP
190 E. CAPITOL STREET SUITE 800
JACKSON, MS 39201
PH. 601-949-4900
Email: kpickett@joneswalker.com
astone@joneswalker.com

Karen Hoffman Lent admitted pro  hac vice
Matthew Martino
Evan Kreiner

Skadden, ARPS, Slate, Meagher&FLOM
One Manhattan West
New York, NY 10001
ph. 212-735-3000

Chadwik Welch
Heidelberg Patterson Welch Wright
368 Highland Colony Parkway
Ridgeland, Mississippi 39157
ph. 601-790-1588
Email: cwelch@hpwlawgroup.com

Jack R. Dodson, III MSB. 10397
K&L Gates, LLP
222 Second Ave. South set. 1700
Nashville, TN 37201
ph. 615-780+6742
Email: rob.Dodson@klgates.com

Allen Bachman pending pro hac vice
K&L Gates, LLP
1601 K. street NW #1
Washington, DC 20006
ph. 202778-9100
email: allen.bachman@klgates.com

Corey hinshaw MSB. 101520
Briana O'Neil MSB. 105714
Watkins & Eager PLLC
400 E. Capitol Street 39201
Jackson, MS 39201
ph. 601-695-1900
Email: chinshaw@watkinseager.com
boneil@watkinseager.com

Rachel Brass admitted pro hac vice
Denna Klaber admitted pro hac vice
Gibson Dunn & Crutcher LLP

555 Mission Street, Suite 3000
San Francisco, CA 94105
ph. 415-393-8200
Email: rbrass@gibsondunn.com
dklaber@gibsondunn.com

Joshua Metclaf, MBN. 100340
CHELSEA LEWIS, MBN 105300
Forman Watkins & Krutz LLP
210 E. Capitol Street, suite 2200
Jackson, MS 39201
ph. 601-960-8600
email: joshua.metcalf@formanwatkins.com
chelsea.lewis@formanwatkins.com

Christopher Ondeck admitted pro hac vice
Stephen Chuk admitted pro hac vice
Proskauer Rose LLP
1001 Pennsylvania Ave. NW, Suite 600
Washington, DC 2004
ph. 202-416-6800
Email: COndeck@proskauer.com
SCuk@proskauer.com