# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**DAVID B. TURNER BUILDERS  LLC, and**                    **PLAINTIFFS**
**NEW ENGLAND CONSTRUCTION LLC**


**VS.**                    **CIVIL ACTION NO.3-21-cv000309 KHJ-LGI**

**WEYERHAESER COMPANY,  WEST FRASSER,**                    **DEFENDANTS**
 **CANFOR COMPANY, GEORGIA-PACIFIC,**
 **SIERRA PACIFIC INDUSTRIAL,**
 **INTERFOR COMPANY, HAMPTON AFFILIATES, IDAHO FOREST**
 **GROUP, POTLATCH DELTIC, RSG FOREST PRODUCTS**
**JOHN DOE 1-5**
**JOHN DOE COMPANIES 1-5**

_____

### PLAINTIFFS  (amended) COMPLAINT PURSUANT TO THE COURT  ORDER DOC.[91]
### (Jury Demanded)
_____

**COMES NOW,** Plaintiffs' David Turner Properties LLC, and New England Construction

LLC by and through his attorney of record and files this court ordered amended

complaint, Court's Order Doc.[91 against all Defendants as captured above for the

following: (1)Violation of the Sherman AntiTrust Act act including section 1and 2,

(2)violation of the Robert-Patman Act, as amended to include the Clayton Anti Trust Act

Section 7,   (3) Section 1983 Conspiracy to monopolize in the lumber market, (4) the

Hart-Scott-Rodino Antitrust Improvements Act,    Also,   **State Claims** of Predatory

Pricing, Price Fixing, Conspiracy in price gouging, negligence in business fair trading, negligent infliction of emotional distress, breach of contract (implied) Business Interference, misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress.

## JURISDICTION AND VENUE

This matter is actionable under the United States Constitution 14th  Amendments, Title 42 of the United States Sherman Anti Trust Act § 2, 15 U.S.C.A. § 1 and 2, the U.S. FEDERAL Clayton Act, U.S. and the Robert Patman Act.   Plaintiff's state claims are actionable in this same honorable Court pursuant to 28 U.S.C.§ 1367.

 Venue is proper because a substantial part of the events that caused Plaintiffs' injuries occurred in Madison County Mississippi which is located in the Southern District of Mississippi Northern Division, this District Court's jurisdiction.

## PARTIES TO THE COMPLAINT

1.    Plaintiff New England Contractors LLC is a Mississippi Licensed Commercial, Residential Builder, as well as Highways Roads and Bridges with its business address located at 227 E. Pearl Street Jackson, Mississippi 39201.

2. Plaintiff David B. Turner Builders LLC is a licensed Residential Building Construction business with its office located 213 Palmers Court Madison, Mississippi 39110.

3. Defendant WEYERHAESER Company is a Lumber Company with its home office is located at 220 Occidental Ave. S. Seattle, WA 98104. This company did not appear on the Mississippi Secretary of State business listing therefore, they may be served pursuantly to F.R.C.P. 4.

4. Defendant WEST FRASSER, is a Canadian Company but has an office located in the United States at1900 Exeter Road, Suite 105 Germantown, TN 38138. They were served through their president as shown in the returned summons and complaint.

5. Defendant Canfor Company is a Canadian Company but has an office located in the United States at 215 Main Street Fulton, AL 36446. They may be served with process pursuantly to F.R.C.P. 4.

6. Defendant Georgia-Pacific is a foreign company headquartered is at Headquarters 133 Peachtree St. NE Atlanta GA 30303. This defendant is registered with the Mississippi Secretary of State and may be served with process through its registered agent on file as C.T. Corporation System 645 Lakeland East Drive STE 101 Flowood, MS 39232.

7.  Defendant Sierra Pacific Industries is a foreign corporation with its home office located at 19794 RIVERSIDE Avenue Anderson, AC 96007.  This company is shown as withdrawn by the Mississippi Secretary of State therefore, they may be served with process pursuant to F.R.C.P. 4.

8.  Defendant INTERFOR, Company is a foreign Company located out of Canada but does have an affiliate office located at  700 Westpark Drive, Suite 100

    Peachtree City, GA USA 30269.   They may be served with process pursuantly to F.R.C.P. 4

9.  DEFENDANT HAMPTON AFFILIATES, upon information and belief is a foreign corporation with locations globally including China.   However, this corporation appears to have a location at 44 Brattle Street, 5th Floor Cambridge, MA 02138, thereby may be served with process through this MA office.

10. Idaho Forest Group is a foreign corporation located at 685 W. Canfield Avenue Coeur d'Alene, ID 83815-5239.   This defendant is not registered with the Mississippi Secretary of State and thereby may be served pursuant to F.R.C.P. 4.

11. Defendant POTLATCH DELTIC is a foreign corporation whom is registered with the Mississippi Secretary of state.  Their home office address is 601 W 1ST AVE, SUITE 1600 SPOKANE,  WA 99201.  They were served with process through their president as shown on record in this matter.  Please see the returned summons and complaint.

12. Defendant RSG FOREST PRODUCTS is a foreign corporation with its office located in 985 Northwest Second Street Kalama, WA 98625.  This corporation is registered with the Mississippi Secretary of State office therefore they may be served pursuant to F.R.C.P. 4.

**FACTS**

13. On or around November 15, 2020 through at least August 2021 Plaintiffs, New England Construction LLC[1], a Mississippi Licensed Commercial Building of buildings and Highway Road and Bridges builder, and David B. Turner Builders LLC, A Residential Builder were building homes in and around November 15, 2020 through the present date.   As such, Plaintiffs, while at all relevant time to this complaint was actively operating the construction of homes located in Madison and Ridgeland Mississippi. It follows that these licensed Mississippi Builders in compliance with the Building codes of Mississippi purchased bulk lumber that included but not limited to 2x4x8, 2x4x10, 2x4x12, and continuing through 2x4x14. Also, lumber 2x6x8 through 2x6x24, 2x8x8 through 2x8x24, 2x10x10 through 2x10x20, and 2x12x8 through 2x12x16[2].  Additionally, Plaintiffs purchased Plywood 4x8 sheets (commonly known as OSB Boards) which are necessary for the

---

[1] New England Construction LLC managing member is also attorney Abby Robinson a construction builder of buildings, highways, roads and bridges for over [25] years.

[2] Plaintiffs have attached invoices and quotes that shows some of the sizes claimed here and for the prevention of being burdensome, Plaintiffs will attempt not to be redundant in describing lumber purchased and needed to be purchase by attaching some of the invoices.

construction of a home per building codes and the "Southern Building Code," commonly known in the industry as the Standard Building Code.   Also, The International Building Code (IBC) is a model building code developed by the International Code Council (ICC). It has been adopted for use as a base code standard by most jurisdictions in the United States.[1][2] The IBC addresses both health and safety concerns for buildings based upon prescriptive and performance related requirements. The IBC is fully compatible with all other published ICC codes. The code provisions are intended to protect public health and safety while avoiding both unnecessary costs and preferential treatment of specific materials or methods of construction.[3] However, a 2019 New York Times story  revealed a secret agreement with the National Association of Home Builders that allowed the industry group, which represents the construction industry, to limit improvements in the code that would make buildings more engaged in buying and using lumber to construct homes and sometimes buildings.  At that time Plaintiffs' noticed that when placing orders for lumber for the new construction as well as remodeling jobs and their sites, the price of lumber had more than tripled the usual market price https://en.wikipedia.org/wiki/International_Building_Code.

14. It follows that Plaintiffs' in their quest to be in compliance with code and in doing their due diligence in seeking the lowest and best price to buy the lumber for their respective construction jobs, inquired through each local building supplier located in and around the Jackson, Mississippi Area as well as inquired through national chain

stores such as Lowes and Home Depot, Phillips Lumber of Canton, MS, Bailey Lumber of Jackson, Mississippi, 84 Lumber in Canton, Mississippi and Prassel Lumber in Ridgeland Mississippi was shocked to discover that the inflation and rise of the cost of lumber was set in motion by Defendants without notice and began to increase rapidly.

15. Plaintiffs' complaining to these distributors inquired more and upon information and belief Plaintiffs discovered that the the top 10 manufacturers of lumber just one day conspired with each other to increase lumber prices over 100 percent during the COVID-19 pandemic(from around November 2020).

16. Plaintiffs avers that  at a mere look at **exhibit A,** there is a revealing of a SINGLE [1] BOARD of lumber 2x6x24, commonly used for Rafters of a house was at an astounding cost of $55.0620 cents.  Now with Plaintiffs purchasing at least 200 of the 2x6's including approximately 40 of the twenty four footers at a cost of $2,200 which Plaintiffs avers that this cost is only for the tallest part of the house, this does not include the entire house, and that price is only for rafters.  Plaintiffs avers that exhibit A gives an ideal of the cost of lumber for homes being built by Plaintiffs.

17.  To make this real simple and clear, an average home in Ridgeland and Madison Mississippi with dimension of around 60 x 90 square feet of ROOFING, or 5,400 square feet of space, including garages, porches and storage rooms, use to cost $155 per square foot causing a   marketing around $525,000 turn key built, but after the monopoly by all Defendants to build, now cost around $225 dollars per square foot or

around $825,000 turn key built.   Plaintiffs avers that such price hike was without

warning and a showing of a conspiracy by Defendants and Predatory Pricing, Price

Fixing, Conspiracy in price gouging.    Plaintiffs avers that this size home likely will

require approximately 300 Rafters starting from  eight feet and going up to 24 feet,

depending on the building codes for splicing rafters.

18. This foundation of the cost of a home is very relevant to show how Defendants in

price gouging simply did not have to raise the prices to a 400 percent increase.

Exhibit A reveals how much a *SINGLE BOARD COST*, and Plaintiffs avers that it

takes hundreds and thousands of boards to be in compliance with the building codes.

Moreover, this foundation is being laid so that a lay person might understand why

and how a builder of homes and buildings rely upon fair prices, and that is just for

new construction, those whom are/were affected by storms would suffer even greater

because of the monopoly and price gouging by Defendants.

19. Plaintiffs avers that prior to Covid-19, which is when Defendants monopolized to

harm Plaintiffs with the conspiracy of exorbitant prices on lumber, the price of a

2x6x24 was not greater than $20.00 twenty dollars.  But while all eyes were on the

medical disaster of covid-19, Defendants took the opportunity to monopolize the

lumber industry for profits gain.  Plaintiffs **exhibit B** a chart by U.S. Lumber Market

shows that lumber prices soared from reasonably priced in November 2019, but was

highjacked by the Top 10 Lumber Manufacturers, whom are also the owners of the

Lumber Saw Mills[3] and such revelation reveals Plaintiffs claims of Predatory Pricing, Price Fixing, Conspiracy in price gouging by all defendants.  The fact that these same top lumber manufacturers also own the saw mills is evidenced of their monopoly over the pricing of the lumber because   once trees, including pine trees and grades such as Oak trees are harvested by the land owners[4] and sold as tree(lumber)[5]those lumber sales become commodities on the market, and since lumber is a commodity as shown in **exhibit B,** then the holders of the manufacturing plants and the saw mills have the explicit  direct control to decide make, and create the price of the lumber to the end users as Plaintiffs in this case.   For the convenience of the reader **exhibit C** is  evidence that each Defendant named in this suit owns the Saw Mills, and as owner of the saw mills their shareholders and companies are the direct controller of the COST OF LUMBER IN Mississippi.

20. As such, Plaintiffs have no choice is even attempting to find other lumber suppliers or manufacturers because the control of the market is  at the whim of Defendants and in using that control, Defendants abused their control when they artificially inflated the price of lumber as shown in exhibit A to an astronomical rise.  Plaintiff avers that

---

[3] Lumber Saw Mills are where the actual trees are harvested and brought for selling from the land to the plant in preparation to be turned into 2x4's and other usable end products for the usage in building.

[4] Any person owning land with timber on it can harvest the timber to sell to the Saw Mills which are owned by the Lumber Manufacturers.

[5] Plaintiff stipulate and the evidence of Defendants attachments that trees turns into lumber at the Saw Mill.  This note might be necessary to fine tune what Defendants lumber companies do with trees when turning them into marketable plywood and other wood items.

defendants had no legitimate reason for the 400% increase in lumber prices due to (1) there was no report of trees being infected with disease which could make a shortage of lumber, (2) there is no report of the warehouses during down all the lumber, at all relevant time to this claims found hereto, (3) the price of gasoline fuel did not even skyrocket causing the transportation of the lumber to inflict a predatory pricing scheme, (4) Covid-19 pandemic caused most builders, such as Plaintiffs to slow down the purchasing of the lumber, which entailed should have caused a decrease in the price of lumber, at least when considering supply was plenty but DEMAND was low due to Covid-19, and (5) there is not one record found in research where the pricing of housing skyrocketed PRIOR to Defendants predatory pricing any monopolizing, for profits, the lumber market prices which Plaintiffs allege has harmed them and their businesses.

21. Plaintiffs contend that Market Insiders report even showed that Lumber prices were inflated overs 400% in [12] months as claimed hereto. Please see **exhibit D.** Therefore, where Plaintiffs have shown the court the accelerated prices of lumber that was ***NEVER*** accustomed, nor warned of such a price hike in the last decade by the Defendants.   But without any notice from defendants to the end users of any catastrophe that could have caused a 400% percent increase in lumber prices, and for the same lumber when bought prior to the [12] month monopoly price gouging increase, the prices were accepted by builders, including Plaintiffs as common and

competitive prices in the market. Plaintiffs contend that the onset of negligence  and

negligence per se is found by Defendants conduct as stated in this complaint.

22. Plaintiffs assert that but for the monopoly violations of Defendants, Plaintiffs had a

reasonable expectancy of fair pricing.   Plaintiffs builds homes and buildings for

clients and typically there is a stipulated amount in the contract for the cost of the

construction of the home.   As known or should be known in the law of contracts,

Plaintiffs cannot alter the contract, i.e. price of the lumber just because Defendants

have decided to artificially inflate the market with monopolized accelerated lumber

material.   The practice of stability has been enjoyed by Plaintiffs for over a decade,

Plaintiffs like any other party in the construction industry must depend and rely on

fair pricing from the lumber industry and when Defendants breached that implied

contractual agreement, they caused irreparable harm to Plaintiffs whom relied upon

fair market pricing of a commodity that showed no signs of a 400% increase in

lumber pricing.    Plaintiffs maintain that Defendants interference with its business

when after Plaintiffs were already engaged in the construction of homes and

buildings, and at certain contract prices, Defendants suddenly,  and without warning,

alerting, or even through the news media or even their own website, inflicted a 400%

increase in the price of lumber causing Plaintiffs to loose construction b usiness,

dishonor contracts to do construction work, and thereby harming the good will of the

Plaintiffs companies. Plaintiff strongly assert that the claims that are supported by the

exhibits attached hereto supports Plaintiffs claims that Defendants were negligent  in

business fair trading with the Plaintiffs(the end buyer of the lumber), and thereby negligently if not intentionally caused severe negligent infliction of emotional distress, Business Interference, , misrepresentation,   infliction of emotional distress,. Plaintiffs claims for emotional distress is premised on not being able to meet their contractual deadlines and building because Plaintiffs simply could not afford the price of a single sheet of wafer board going from $7.99 to $40 plus dollars, neither could Plaintiffs afford a jump of a 2x6x24 single stick stud from under $20 dollars to an unreasonable controlled price of $58.00.  Please see **exhibit H.**

23. Plaintiffs had construction work ongoing during all times of this monopoly and price gouging which once in play as claimed in this suit, Defendants caused a severe infliction of injuries upon Plaintiffs because of the sudden 400% increase in lumber prices could not be passed down to the agreements already in place with Plaintiffs. Plaintiffs contend that this sudden increase in price was a breach of contract that was implied by Defendants when they stabilized the pricing of the same lumber for at least a decade.

24. Plaintiffs avers that the monopoly is present when looking at the exhibits the price of lumber that increased over 400% was by ALL Defendants, at the SAME TIME, and during the SAME TIME PERIOD claimed by Plaintiffs as a monopoly of the lumber market.

25. Plaintiffs avers that it could look more reasonable if for instance, two of the largest manufacturers price was inflated maybe at 50%, and three other of these Defendants

prices inflated at a rate of 200%, but the fact is that it is unreasonable to understand how the **PRICE OF ALL [10] DEFENDANTS happen to INCREASE AT THE SAME TIME, AND AT THE SAME RATE, AND AT THE SAME PRICE.**

26. Plaintiffs, in doing their due diligence to stay their cost in buying the lumber from distributors such as 84 Lumber, located in Mississippi, Phillips Lumber of Canton, Mississippi, Prassel Lumber in Ridgeland, Mississippi, Home Depot in Jackson and Madison, Mississippi,  and Lowes located in Ridgeland, and Madison Mississippi. Plaintiffs attach as **exhibit E**, photos of each Defendants product located within Home Depot and Lowes stores in Mississippi.  Plaintiffs contend that they purchased lumber at these stores and from the prices shown in these exhibits each Defendants were at the same monopolized prices and at the same time.

27. Plaintiffs avers that even more egregious is the fact that a necessary board as a 4x8 sheet of  OSB Wafer board which usually cost an approximate $8.00 per sheet prior to the monopolize price gouging by Defendants rose to an astronomical price of $38.50 per sheet. Please see **exhibit A.**

28. Plaintiff contends that each Defendant has used its dominant position in the lumber industry and during COVID-19 to monopolize extremely high and unreasonable prices of lumber that caused an interference with Plaintiffs business and contractual agreements that Plaintiffs were engaged in as well caused a severe business interference in Plaintiffs being able to afford to buy and finish new construction homes due to defendants monopoly in the lumber market.

**29.**  Plaintiffs exhibits shows that each defendant is considered the top lumber producers and controllers in the lumber commodity market, and that each defendant owns the sawmills which should have negated less cost of lumbers, instead of the exorbitant high prices as claimed here.  Moreover, there exist no legitimate reason for the price gouging by defendants as claimed here.

**30.** Upon information and belief, Defendants in this action all communicated via international air waves telephone, internet, and/or in person and caused their stock in their respective companies to rise at levels of a monopoly by all Defendants. Plaintiffs further alleges that there is no set of facts that could show Defendants randomly selecting the same exorbitant prices for lumber at the same  time and it just so happens that those artificial prices caused all Defendants to soar in profits.  This is not an assumption these are facts that are proven in this complaint by attachments of exhibits that support Plaintiffs claims.  Upon research of the stock market and lumber market at all relevant times to the year of 2020,   Defendants, through the stock exchange monopolized and conspired to raise the lumber prices to over 400% during Covid-19(2020) and all  **at  the identical  time, with the same identical prices."** Plaintiffs avers from the attachments of exhibits hereto, in order for such this systemic scheme to work by Defendants, all defendants appear to have colluded to unreasonable prices at the same time that would cause them not to loose any profits from the slow down of covid-19.  Plaintiffs believes that the exhibits  demonstrates a

logical point that if the economy of purchasing lumber is low due to covid-19[6]. Therefore, for these Defendants, the creator of lumber companies prices to have a profitable 2020 year, seems to have been generated by Defendants artificially increasing the cost of lumber through monopolization which violates the Sherman Act I and II, Clayton Act and the other claimed federal violations.  It is reasonable for Plaintiffs to say that no windfall of profits could have resulted when the construction industry was on hold.  As such, where Defendants are bolstering of their great 2020 year of profits, clearly such bombastic conduct must to have come by the artificially price gouging as claimed by Plaintiffs.

31. Moreover, upon information and belief, the Security Exchange Commission(SEC) only allows an industry to claim that portion of the industry, i.e. Lumber cannot also be identified as the Oil industry.  Therefore, for months there was no construction any where, yet alone in Mississippi, so the question becomes how did the Defendants, the lumber top 10 manufacturers profit more than they did the year before as shown in **exhibit B and D.** Plaintiffs contend that there is no legitimate way such profits could have occurred but for the price gouging by all Defendants.   Plaintiffs submits **exhibit F,** 84-Lumber online boasting about having the best **RECORD-BREAKING YEAR IN 2020.**  Plaintiff assert that if the distributor 84 Lumber had a record breaking year during the covid-19 Pandemic when the prices of lumber was raised over 400%, then

---

[6] There were Mandates from the Federal Government that halted movement of any person except frontline First Responders.  Plaintiff ask that the Court take judicial notice of this fact.

the manufacturers and saw mills **MUST TO HAVE HAD A RECORD BREAKING**

**YEAR ALSO,** because 84 Lumber receives their lumber products that is purchased

by Plaintiffs from the Defendants.  Further, where did the lumber products that gave

84 Lumber this wind fall of profits in 2020 when the world of construction was shut

down by the federal government come from.  Plaintiffs contend that the stock within

the saw mills and warehouses of Defendants were plenty in abundance, so if the price

of fuel was low[7] to ship the lumber what legitimate justification of price gouging

could Defendants present regarding their ill conduct; there is none.  In fact, even if

Defendants attempted to use a shortage of workers to fill orders, they still will fall

short of legitimacy for a 400% increase.  Defendants would have to show that they

increased the pay of their employees to over 100% of the earned income they made

as employees of Defendants.  However, upon information and belief from reliable

sources, Defendants did not increase not even one warehouse employee salary $5

dollars per hour during the year of 2020.  As such, Defendants have misrepresented

themselves to Plaintiffs as fair competitors of each other, when the facts shows that

Defendants likely colluded and conspired as a single unit to deprive Plaintiffs of their

expectancy of fair pricing of lumber.  As such, Plaintiffs state claims of  Predatory

Pricing, Price Fixing, Conspiracy in price gouging, negligence in business fair

trading, negligent infliction of emotional distress, Business Interference, breach of

---

[7] fuel prices were low because people did not drive during the government shut down.  Plaintiff ask the court to take judicial notice of the Oil prices and fuels from those markets.

contract, misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress are all found in the conduct of Defendants as claimed in this complaint.

32. Plaintiffs have suffered severe business interference, including loss of income, irreparable loss of business and tortious infliction of emotional distress because of the § 1983 conspiracy of all Defendants in this case to monopolize the lumber industry and Defendants inflicting a 400 percent or greater rise in the cost of lumber for no legitimate reason but monopolizing the market. Plaintiff further raises the inquisition that Defendant's conduct did in fact rise to a level of monopolizing the lumber market when Defendants reached into the state of Mississippi either by buying Saw Mills in Mississippi and/or colluding with other Defendants to raise the price of lumber in the lumber commodity market that effected the price of lumber in Mississippi. Plaintiffs have submitted this chart (Image credit: Tom Clausen/ **shutterstock.com**), but desires to stretch it into this complaint to show the degree of power over the prices of lumber that each Defendant exerted during all times relevant to this lawsuit.

Table 1: Top U.S. Manufacturers of Softwood or Hardwood Lumber

| Company | U.S. Headquarters | Number of U.S. Lumber Mills/Plants | Capacity (MMBF) [3] |
|---|---|---|---|
| Weyerhaeuser Co. | Seattle, WA | 19 | 3,552 |
| Georgia-Pacific LLC | Atlanta, GA | 27 | 2,949 |
| West Fraser Timber Co., Ltd. | Germantown, TN | 21 | 2,354 |
| Sierra Pacific Industries | Anderson, CA | 10 | 2,077 |
| Interfor (International Forest Products, Ltd.) | Peachtree, GA | 14 | 1,952 |
| Hampton Affiliates | Portland, OR | 7 | 1,869 |
| Canfor Corp. | Mobile, AL | 12 | 1,416 |
| Idaho Forest Group | Coeur d'Alene, ID | 7 | 1,270 |
| RSG Forest Products | Kalama, WA | 5 | 801 |
| PotlatchDeltic Corp. | Spokane, WA | 6 | 670 |

Plaintiff contends that before the predatory pricing as complained hereto, Defendants lumber prices were reasonable and stable, and Plaintiffs could rely on fair pricing of lumber.  Now, Defendants have purposefully directed their explosive pricing of lumber in

to Mississippi whereby Plaintiffs operates businesses that have suffered as a result of the behavior of each defendant.

**33.**   There are more facts that supports Plaintiffs claims that **The 10 largest softwood lumber manufacturers in the United States, led by Weyerhaeuser, accounted for just over half of all U.S. production capacity in 2020, according to *Forisk consulting,*** as found at Tom Clausen/<u>shutterstock.com</u>) **specializes in analyzing forest supplies, wood demand and timber pricing to develop forecasts and strategic guidance for clients.**

| Rank | Company | Current Production Capacity (MMBF) |
|------|---------|-----------------------------------:|
| 1 | Weyerhaeuser | 4,310 |
| 2 | West Fraser | 3,275 |
| 3 | Georgia-Pacific Co | 3,273 |
| 4 | Sierra Pacific Industries | 2,701 |
| 5 | Interfor | 2,055 |
| 6 | Canfor | 2,039 |
| 7 | Hampton Affiliates | 1,825 |
| 8 | Idaho Forest Group | 1,370 |
| 9 | PotlatchDeltic | 1,070 |
| 10 | RSG Forest Products | 875 |
| | Total Top 10 | 22,793 |

_Forisk's top 10_ softwood lumber producers combined for a total production capacity of 22,793 billion board feet (MMBF) in 2020 during a year marked by the COVID-19 pandemic. Production capacity of the top leaders was **up 2.1% compared to 2019 and reflected an increase of 25.3% over 2017.** This is exactly what Plaintiffs claims of monopoly, conspiracy and price gouging by Defendants concerns.

The top 10 list includes three Canadian-based companies: West Fraser, No. 2; Interfor, No. 4; and Canfor, No. 5.  Georgia-Pacific moved from No. 4 to No. 3 in swapping positions in the standings with Sierra Pacific. _Forisk noted_ that G-P "made the most changes last year." Among other things, G-P **opened a new $150 million sawmill in Albany, Ga**., and re-started a rebuilt mill in Warrenton, Ga.  This fact is well published by Defendant Georgia Pacific and such profitability was in 2020, the year claimed by Plaintiffs that all defendants price gouged the lumber market for profits and their were no alternative in buying the lumber because the prices of lumber are controlled by these Defendants.

34.  Plaintiffs avers that there is even an on point case regarding this same violation fo the Sherman Anti Trust Act.  In the case of _**Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.,**_ 549 U.S. 312, 127 S. Ct. 1069, 166 L. Ed. 2d 911 (2007). Saw Mill operator brought action under § 2 of the Sherman Act alleging that competitor monopolized and attempted to monopolize Pacific Northwest input market for alder sawlogs through its purchases of sawlogs. The United States District Court for the

District of Oregon, Owen M. Panner, Senior Judge, 2003 WL 23715982, entered judgment on jury verdict in plaintiff's favor, denied defendant's motion for judgment as matter of law or for new trial, and awarded attorney fees and costs. Defendant appealed. The United States Court of Appeals for the Ninth Circuit, 411 F.3d 1030, **_affirmed._** Certiorari was granted.

Respondent, Ross–Simmons, a sawmill, sued petitioner Weyerhaeuser, alleging that Weyerhaeuser drove it out of *315 business by bidding up the price of sawlogs to a level that prevented Ross–Simmons from being profitable.

A jury returned a verdict in favor of Ross–Simmons on its monopolization claim, and the Ninth Circuit affirmed. We granted certiorari to decide whether the test we applied to claims of predatory pricing in **_Brooke Group Ltd. v. Brown & Williamson Tobacco_** Corp., 509 U.S. 209, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993), also applies to claims of predatory bidding. We hold that it does. Accordingly, we vacate the judgment of the Court of Appeals.  Certiorari was granted.

**35.**   Here, Plaintiff claims for violation of the Sherman Act Section [1] is that Plaintiffs have provided, at this stage, the best evidence that it is not logical to think that all Defendants prices would increase at the same time( year of 2020),and increase to over 400% at the same time period when each company has its own tax identification number suggesting that they are different companies, and has declaration of being different companies with different president and located at different addresses.  However, at close glance, if that is true then it would have to be ill-logic that all Defendants just happen to

have some legitimate reason to artificially inflate the price of lumber at the same 400% at the same time when all companies are even located in different parts of the nation. Therefore, the element of collusion of restricting trade is found in this matter because all Defendants are the lumber commodity creators, makers or even developers of lumber and the prices thereof, and they **ALONG DID INCREASE AND DECREASE THE PRICE OF LUMBER, which Plaintiffs claim to have damages as a result of including business interference, loss profits, and  loss of business.**

36.   The Sherman Act Section [2], monopolization elements are found in this matter where Plaintiffs have shown targeted facts that prove that all Defendants named hereto possess the POWER to make, change, elevate, defeat and/or increase the prices of lumber in the lumber market as claimed by Plaintiffs in this lawsuit.  Plaintiffs have also shown through facts and attachments that *these same CONGLOMERATE CORPORATIONS EVEN SELL SAW MILLS TO EACH OTHER* as a sign to Plaintiffs of the power to control the lumber market is maintained by the same bad behavior of monopoly by these Defendants.

37.   As a result, Plaintiffs have been severely damaged in business, emotionally, as well as contractually due to the fact that Plaintiffs were reliant upon Defendants being fair in pricing since they control the price of lumber as shown above and in the exhibits attached hereto.  The

38.   To move this complaint into litigation, Plaintiffs also offers considering the law of, in  *Bell At. Corp. V. Twombly,* 550 U.S.  544, 595-97, 127 S. Ct. 1955, 1988-89, 167 L.

Ed. 2d 929(2007) the U.S. Supreme Court held: "The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."   As such, Plaintiffs claims are asserted sufficiently enough to cause this matter to enter into litigation and therefore, any motion to dismiss this complaint would be fatal in its pleading.   The Supreme Court also held that: " If the ***<u>allegation of conspiracy happens to be true</u>***, today's decision obstructs the congressional policy favoring competition that undergirds both the Telecommunications Act of 1996 and the Sherman Act itself. More importantly, even if there is abundant evidence that the allegation is untrue, directing that the case be dismissed without even looking at any of that evidence marks a fundamental—and unjustified—change in the character of pretrial practice. ***Bell Atl. Corp. v. Twombly,*** 550 U.S. 544, 557–59, 127 S. Ct. 1955, 1966–67, 167 L. Ed. 2d 929 (2007).

**39**.  Additionally, Plaintiffs claims that the court has jurisdiction over this matter pursuant to ***Helicopteros Nacionales de Colombia, S.A. v. Hall***, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 1984), the U.S. Supreme Court held that:  "[t]he forum State *does not exceed its powers under the Due Process Clause* if it asserts personal jurisdiction over a corporation that delivers it*s products into the stream of commerce with the* ***expectation that they will be purchased by consumers in the***

*forum State"* and those products subsequently injure forum consumers. **_World-Wide_**

**_Volkswagen Corp. v. Woodson,_** *supra,* 444 U.S., at 297–298, 100 S.Ct., at 567–568.

40.   Plaintiffs avers that each Defendant has intentionally, deliberately, and purposefully monopolized the lumber and timber industry when they bought Saw Mills as shown in exhibit C, giving Defendants total and complete control of the prices of Lumber and the ability inflict predatory price fixing as claimed by Plaintiffs.   Plaintiffs contend that Defendants deliberately and with   purpose structured price gouging in Mississippi through telecommunications via the internet and shipped lumber directly to the forum state of Mississippi to the distributors as shown in above.   As a result, Plaintiffs were injured while they relied on good faith in business dealings from all Defendants.

41.  Next, the facts plead in Plaintiffs amended complaint are substanial enough to pass Defendants attempt at a motion to dismiss.  Indeed Mississippi Supreme Court holds that: "*When considering a motion to dismiss, the allegations in the complaint must be taken as* *true and the motion should n*ot be granted unless it appears beyond reasonable doubt that the plaintiff will be unable to prove any set of facts in support of her claim." **_Howard v._** **_Estate of Harper ex rel. Harper,_** 947 So.2d 854, 856 (Miss.2006) (citing **_Liggans v._** **_Coahoma Sheriff's Dep't,_** 823 So.2d 1152, 1154 (Miss.2002)). "This Court must find that there is no set of facts that would entitle a defendant to relief under the law in order to affirm an order granting the dismissal of a claim on a Rule 12(b)(6) motion." **_Wilbourn v._**

***Equitable Life Assurance Soc.,*** 998 So.2d 430, 435 (Miss.2008) (citing ***Lowe v.***

***Lowndes County Bldg. Inspection Dep't,*** 760 So.2d 711, 713 (Miss.2000)). A Rule 12(b)

(6) motion to dismiss tests the legal sufficiency of a complaint, and an inquiry as to the

legal sufficiency is "essentially limited to the content of the complaint." ***T.M. v. Noblitt,***

650 So.2d 1340, 1345–46 (Miss.1995) (quoting ***Jackson v. Procunier,*** 789 F.2d 307, 309

(5th Cir.1986)[8].

**42.**   Now to the facts that support violations of the Sherman Anti Trust Act Section [1]

found under the ***United States v. Socony-Vacuum Oil Co.,*** 310 U.S. 150, 165–66, 60 S.

Ct. 811, 818–19, 84 L. Ed. 1129 (1940), the U.S. Supreme Court held that the elements of

Sherman anti-trust act include: *combined and conspired together for the purpose of*

*artificially raising prices.*   Plaintiffs assertions is that all Defendants *at **the same time***

**a**nd at ***the same price*** artificially raised the prices of lumber.   Plaintiff also asserted that

logic suggest that by the fact that Defendants prices were all raised at the same time to

the same price could not be reasonable fixed without one Defendant telling another what

they are doing, as such, that's a conspiracy and the facts shown in the invoices(please see

**exhibit A)** suggest the same.   Moreover, Plaintiffs avers that there was not even one

company that did not have a different price gouged lumber during the entire year of 2020.

Plaintiffs contend that the scheme of Defendants was total control of pricing at their

---

[8] Plaintiffs asserts the law in this matter in an attempt to move the matter into litigation without further delay of 12(b)(6) motions to dismiss and jurisdictional motions, even though it is Defendants prerogative to file such motion anyway.

agreed price into to the lumber commerce and such a scheme was easily accomplished by Defenants because they control the Saw Mills and the Lumber commodities on the market. Please see **exhibit B and D.**  As such, the conspiracy to inflate the predatory pricing was in the total control Defendants.

**43.**  Last, Defendants by sheer virtue of being the deciders, makers and controllers of the Lumber Market on the stock exchange, knew or should have known that Plaintiffs as licensed Mississippi Builders were detrimentally reliant upon fair and competitive pricing of lumber in order to be in compliance of the Standard and International Building Codes as held in the state Mississippi.  However, based on the facts attached to this complaint, Defendants profits soared in 2020 in profits,   while at the same time ruining and interference with the business of construction against Plaintiffs with their intentional and deliberate conspiracy to artificially raise the prices of lumber over 400% as shown in **exhibit A.**

**44.**  Plaintiffs contends that the law of Conspiracy under Section 1983 is found as  "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." ***Arsenaux v. Roberts,*** 726 F.2d 1022, 1024 (5th Cir. 1982) (Rubin, J.)**.** But ***§ 1983 conspiracy*** "claim need not [meet] a 'probability requirement at the pleading stage; [plausibility] simply calls for enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.' " ***Jabary,*** 547 F. App'x at 610 (quoting ***Twombly***, 550 U.S. at 556, 127 S. Ct. 1955).

**45.**   Plaintiffs have shown more than plausible facts that defendants, more than two of them, have conspired to artificially raise the prices of lumber in and around the year of 2020 by the mere fact that they all likely schemed the predatory pricing ideal at the same time with the same pricing as shown above.

**46.** Next, the Court reasoned that Plaintiff should describe what speific acts under what section of the Clayton Act or the Robinson-Patman Act they bring their claims.   The Clayton Act addresses *specific practices that the Sherman Act does not clearly prohibit,* such as ***mergers*** and interlocking directorates (that is, *the same person making business decisions for competing companies)*. **Section 7** of the Clayton Act prohibits mergers and acquisitions where the effect "may be substantially to lessen competition, or to tend to create a monopoly."   Here, Plaintiffs have asserted substantial facts that shows that All Defendants are in violation of the "Merger," element under Section VII of the Clayton Act.   Exhibit G, is public information where Defendant Interfor Acquired [4] SawMills from Georgia Pacific.   This fact shows that the same actors, the top 10 lumber producers, merely swapping saw mills in an effort to perpetrate their scheme of controlling and directing the prices of Lumber, as Plaintiffs complaint state.   The law holds that As   the Robinson-Patman Act of 1936 was amended to include the merger aspect of the Clayton Act, and that the Clayton Act also bans certain discriminatory prices, services, and *allowances in dealings between merchants.* Here, Plaintiffs have demonstrated that the dealing between the same Defendants is a showing of their controlling the market and that such control and dominance is prohibited under the Robinson-Patman Act as

amended by the Clayton Act.    In fact, in 1976 under the Hart-Scott-Rodino Antitrust Improvements Act, such mergers and acquisitions by these Defendants were prohibited until they informed the government of such acquisition, to this date Plaintiffs have not found any record to the U.S. Government of this acquisition of sawmills exchange that Plaintiffs vehemently holds has injured their business by the artificial price gouging by Defendants.  Defendants were required to give the government their  companies planning of large mergers *__or__* acquisitions by notify the government of their plans in advance. The Clayton Act also authorizes private parties to sue for triple damages when they have been harmed by conduct that violates either the Sherman or Clayton Act and to obtain a court order prohibiting the anticompetitive practice in the future.

 47.  Plaintiffs complaint is in direct compliance with the elements of the Clayton Act and the Hart Scott Rodino Antitrust Improvements Act because there does not exist a record that shows that the government was notified in advance of these swapping mergers of sawmills by Defendants and as a result Plaintiffs have suffered the damages stated in this complaint.

48.    Plaintiffs state claims of Predatory Pricing, Price Fixing, Conspiracy in price gouging, negligence in business fair trading, negligent infliction of emotional distress, Business Interference, misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress have all been shown throughout this complaint and thereby recognizable to be brought with Plaintiffs federal claims in this court.

## CAUSE OF ACTION

### COUNT ONE:

(1)Violation of the Sherman AntiTrust Act act including section 1and 2, (2)violation of the Robert-Patman Act, as amended to include the Clayton Anti Trust Act Section 7,  (3) Section 1983 Conspiracy to monopolize in the lumber market, (4) the Hart-Scott-Rodino Antitrust Improvements Act.

 Plaintiffs repeats and re-alleges all paragraph and herein found in this complaint.

Plaintiffs federal claims of the Sherman AntiTrust Act including section one and two, the Clayton Antitrust Act Section 7, the Rober-Patman Act as amended to include the Clayton Act section 7, and Section 1983 Conspiracy to monopolize in the lumber market, (4) the Hart-Scott-Rodino Antitrust Improvements Act,   As a result,   Plaintiffs contend that Defendants are liable for the harm caused as asserted hereto.

 Plaintiffs further contend that the actions of all Defendants were negligent, reckless, willful and showed a reckless disregard for law relating to these federal acts.

### COUNT TWO: ALL CLAIMS LISTED IN THE  ABOVE COUNT ONE AND STATE CLAIMS

(9)  Plaintiffs repeat and re-allege all previous paragraphs, as if set forth fully herein, and in the complaint.

 All Defendants are in violation of Plaintiffs STATE CLAIMS OF:Predatory Pricing, Price Fixing, Conspiracy in price gouging, negligence in business fair trading, negligent infliction of emotional distress, Business Interference, breach of contract,

misrepresentation, intentional infliction of emotional distress, negligent infliction of emotional distress.

## COUNT THREE:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs repeat and re-allege all paragraphs as if set forth fully herein and in the complaint. Plaintiffs avers that Defendants are liable for all of Plaintiff's damages as asserted hereto of intentional infliction of emotional distress, negligent infliction of emotional distress as well as Plaintiffs mental anguish commencing from the conduct of Defendants.

## <u>DAMAGES</u>

54.  The actions of all Defendants  were  reckless and negligent, wanton, negligent per se, showed a reckless disregard for Plaintiffs  United States rights to be free from Violation (1)Violation of the Sherman AntiTrust Act act including section 1and 2,  (2)violation of the Robert-Patman Act, as amended to include the Clayton Anti Trust Act Section 7,  (3) Section 1983 Conspiracy to monopolize in the lumber market, (4) the Hart-Scott-Rodino Antitrust Improvements Act, and Plaintiffs State Claims of Predatory Pricing, Price Fixing, Conspiracy in price gouging, negligence in business fair trading, negligent

infliction of emotional distress, Business Interference, , misrepresentation, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress.

55.    As a consequence of the foregoing misconduct of all Defendants,   Plaintiffs sustained pain and suffering, excessive mental distress, emotional distress, depression, insomnia, shock, fright, embarrassment, loss of earned income, economical loss of peaceable life without worry of inflated prices on lumber by defendants, humiliation, embarrassment, Compensatory damages, consequential damages, attorney fees, cost of litigation, cost of experts, economic damages, medical payments, loss of income, actual damages, discretionary damages, excess damages, double damages, expectation damages, foreseeable damages, future damages, punitive damages and any other damages that are to be determined by a jury, and this honorable Court against all Defendants;

  As a consequence of the foregoing misconduct of  these Defendants, Plaintiff has  been damaged in an amount of the limits of this Court's  jurisdiction.

## **RELIEF**

58. **WHEREFORE, each Plaintiff** respectfully pray for the following relief:

1.   Enter an **INJUNCTION** to cause these market controlling Defendants to end their abuse of monopolizing the lumber market, inflicting predatory pricing on th ecost of lumber, and  a declaration by Defendants to inform the government of its intentions to raise the price of lumber over 100% at any given time.

2.  Award all Plaintiffs with Punitive damages against all Defendants

and every claim as stated in the above paragraphs

3.  Award each Plaintiff with Compensatory damages, consequential damages, attorney

fees, cost of litigation, cost of experts, economic damages, medical payments, loss of

income, actual damages, discretionary damages, excess damages, double damages,

expectation damages, foreseeable damages, future damages, punitive damages, and

any damages that are to be determined by a jury, against all Defendants;

4.   Such injunctive relief as the Court deems necessary and proper against all

Defendants;

**RESPECTFULLY SUBMITTED this the 21st day of December, 2021**

**/s/ Abby Robinson esq. MSB(105157)**
**ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.**
**227 E. Pearl Street**
**Jackson, Mississippi 39201**
**Ph. 601-321-9343**
**Fax. 601-487-6326**
**Email: arobinsonlawfirm@yahoo.com**
**Secondary: abby@askabbylaw.org**

**CERTIFICATE OF SERVICE**

The undersigned acknowledges that she has filed the foregoing pleading on December 21, 2021 with the Clerk of the Court whom has sent the same to all parties in this litigation.


**/s/ Abby Robinson (MSB 105157)**

**ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.**
**227 Pearl Street**
**JACKSON, MISSISSIPPI 39201**
**PHONE: 601-321-9343**
**EMAIL: arobinsonlawfirm@yahoo.com**
**EMAIL: abby@askabbylaw.com**
**attorney for Plaintiff**

Ryan Beckett MBN. 99524
La'Toyia Slay  MBN. 104804
1020 Highland Colony Parkway, Suite 1400
Ridgeland, MS 39158
ph. 601-948-5700
Email: rayan.beckett@butlersnow.com
La'toyia.Slay@butlersnow.com

Erik Koons(admitted pro hac vice
Baker Botts LLP
700 K. Street NW
Washington, DC 20001
Email erik.koons@bakerbotts.com
jana.seidl@bakerbotts.com

Craig Stanfield(admitted pro hac vice
King & Spalding LLP
1100 Lousiana, Suite 4100
Houston, TX 770002
email: estanfield@kslaw.com
Carl Burkhalter pro hac vice
Maynard, Cooper & Gale P.C.
1901 6th Avenue North, Suite 1700

Birmingham, AL 35203
Email: cburkhalter@maynardcooper.com
Email: parrot@maynardcooper.com


R. David Kaufman, MSB 3526
M. Patrick McDowell, MSB. 9746
Brunni, Grantham, Grower & Hewes, PLLC
190 E. Capitol Street, Suite 100
Email dkaufman@brnini.com
pmdowell@brunini.com

David Maas, admitted pro hac vice
Davis Wright Tremaine LLP
920 5th Avenue, suite 3300
Seattle, WA 98104-1610
davidmaas@dwt.com
ph. 206-622-3150

Adam Stone MSB. 10412
Kaytie Pickett MSB. 103202
Jones Walker LLP
190 E. CAPITOL STREET SUITE 800
JACKSON, MS 39201
PH. 601-949-4900
Email: kpickett@joneswalker.com
astone@joneswalker.com

Karen Hoffman Lent admitted pro  hac vice
Matthew Martino
Evan Kreiner
Skadden, ARPS, Slate, Meagher&FLOM
One Manhattan West
New York, NY 10001
ph. 212-735-3000

Chadwik Welch
Heidelberg Patterson Welch Wright
368 Highland Colony Parkway
Ridgeland, Mississippi 39157

ph. 601-790-1588
Email: cwelch@hpwlawgroup.com

Jack R. Dodson, III MSB. 10397
K&L Gates, LLP
222 Second Ave. South set. 1700
Nashville, TN 37201
ph. 615-780+6742
Email: rob.Dodson@klgates.com

Allen Bachman pending pro hac vice
K&L Gates, LLP
1601 K. street NW #1
Washington, DC 20006
ph. 202778-9100
email: allen.bachman@klgates.com

Corey hinshaw MSB. 101520
Briana O'Neil MSB. 105714
Watkins & Eager PLLC
400 E. Capitol Street 39201
Jackson, MS 39201
ph. 601-695-1900
Email: chinshaw@watkinseager.com
boneil@watkinseager.com

Rachel Brass admitted pro hac vice
Denna Klaber admitted pro hac vice
Gibson Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
ph. 415-393-8200
Email: rbrass@gibsondunn.com
dklaber@gibsondunn.com

Joshua Metclaf, MBN. 100340
CHELSEA LEWIS, MBN 105300
Forman Watkins & Krutz LLP
210 E. Capitol Street, suite 2200
Jackson, MS 39201

ph. 601-960-8600
email: joshua.metcalf@formanwatkins.com
chelsea.lewis@formanwatkins.com

Christopher Ondeck admitted pro hac vice
Stephen Chuk admitted pro hac vice
Proskauer Rose LLP
1001 Pennsylvania Ave. NW, Suite 600
Washington, DC 2004
ph. 202-416-6800
Email: COndeck@proskauer.com
SCuk@proskauer.com